**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 13, 2009

No. 08-60583
Summary Calendar

Charles R. Fulbruge III
Clerk

JAMAL M AWAD

Plaintiff-Appellant

v.

ERIC H HOLDER, JR; BUREAU OF CITIZENSHIP AND IMMIGRATION
SERVICES, Department of Homeland Security

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:06-cv-870

Before DAVIS, GARZA, and PRADO, Circuit Judges.

PER CURIAM:[*]

Jamal M Awad, pro se, appeals the district court's denial of his application

for naturalization. For the following reasons, we affirm.

## I. BACKGROUND

Awad arrived in the United States in 1991. He was granted asylum in

1992 and became a lawful permanent resident in 1994. In January 1999, Awad

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

applied for naturalization. The Department of Homeland Security ("DHS")[1] interviewed him in March 1999 and later rejected his application. During his interview, a DHS representative asked Awad if he had ever been arrested. He conceded that he had—"for family matters"—which was consistent with the disclosures in his naturalization application. The DHS discovered, however, that Awad had been charged with embezzlement sometime in 1994 (the "1994 embezzlement charge"), which he had not disclosed.[2] The DHS found that, by failing to disclose this prior charge, Awad had provided false statements in an effort to obtain naturalization. Because of his embezzlement charge and his failure to disclose it, the DHS denied Awad's naturalization application.

Awad filed an administrative appeal, contending that his application was denied due to a lack of information and his misunderstanding the questions asked of him. Awad asserted that the 1994 embezzlement charge stemmed from a civil dispute between him and a customer of his auto-body shop. Moreover, the charge had been reduced to "trespass less than larceny," to which Awad had pleaded guilty. Awad argued that his failure to disclose this charge was an insufficient ground for denying his application. The DHS granted Awad a hearing and reopened his application March 2000.

In October 2003, while Awad's appeal was pending, he pleaded guilty to conspiracy to commit mail and wire fraud in violation of 18 U.S.C. §§ 371, 1341, and 1343 (the "2003 federal conspiracy conviction"). Awad was sentenced to twelve months' imprisonment and ordered to pay $63,485.82 in restitution. DHS

---

[1] Some of the events concerning Awad's case involve the Immigration and Naturalization Service. As of March 1, 2003, however, many of the Service's duties have been transferred to the DHS. *See Zaidi v. Ashcroft*, 374 F.3d 357, 358 n.1 (5th Cir. 2004) (per curiam). For clarity's sake, we refer only to the DHS as the relevant government agency throughout this opinion.

[2] Although the DHS's decision is unclear on this point, it appears to have believed that Awad pleaded guilty to this charge.

later served Awad with a Notice to Appear, asserting that he was deportable as an alien convicted of an aggravated felony due to his 2003 federal conspiracy conviction. An immigration judge eventually ordered Awad deported. The Board of Immigration Appeals dismissed Awad's administrative appeal, and this court denied Awad's petition for review. *See Awad v. Gonzales*, 235 F. App'x 203 (5th Cir. 2007).

In July 2006, the DHS affirmed its original denial of Awad's naturalization application and reiterated its original reasoning. The DHS found that Awad was convicted of a crime during the five years prior to his naturalization application, apparently in reference to Awad's embezzlement charge and the concomitant guilty plea to a reduced charge. The DHS also stated that Awad had failed to disclose nine arrests during his naturalization interview.[3] Finally, the DHS noted that Awad had been convicted of conspiracy to commit mail and wire fraud after filing his application. Not persuaded by Awad's explanation for his false statements, the DHS again denied Awad's naturalization application.

Awad, proceeding pro se, sought review of this decision in the Southern District of Mississippi. *See* 8 U.S.C. § 1421(c) (authorizing federal district courts to review naturalization applications de novo). The district court agreed with the DHS and, on the government's motion for summary judgment, held that Awad was ineligible for naturalization as a matter of law. Awad now appeals.

## II. DISCUSSION

We review a grant of summary judgment de novo, applying the same standard as the district court. *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 873 (5th Cir. 1999). Because Awad is proceeding pro se, we liberally construe his arguments. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).

---

[3] The record does not appear to contain evidence of all nine arrests.

On appeal, Awad does not directly challenge the district court's decision. But, broadly construing his brief, we find therein two general arguments. First, Awad contends that the DHS and the district court erred in denying his naturalization application. Second, he argues that the DHS's six-year delay in adjudicating his administrative appeal entitles him to relief in the form of naturalization *nunc pro tunc*—that is, naturalization *before* his 2003 conviction. We address each in turn.

## A.    Awad's Naturalization Application

As a necessary prerequisite to obtaining naturalization, an applicant must demonstrate that he or she is a person of good moral character during both the five years prior to filing a naturalization application and the period between filing the application and admission to citizenship. *See* 8 U.S.C. § 1427(a); 8 C.F.R. § 316.10(a). Although "good moral character" lacks a singular definition, Congress and the DHS have set out conditions under which an applicant is precluded from demonstrating the requisite good moral character. Of particular relevance to the present case, giving false testimony to obtain naturalization forecloses a finding of good moral character, *see* 8 U.S.C. § 1101(f)(6); 8 C.F.R. § 316.10(b)(2)(vi), as does a conviction for an aggravated felony, *see* 8 U.S.C. § 1101(f)(8).

Like the district court, we need look only to Awad's failure to disclose his 1994 embezzlement charge and concomitant guilty plea to a lesser charge. The district court affirmed the denial of Awad's naturalization application on the ground that he had given false testimony to obtain naturalization. Because Awad had not disclosed this charge in his application, the district court concluded that the DHS did not err in finding that he lacked the requisite good moral character. We find no error in the district court's conclusion. Moreover, as the government notes, Awad is currently statutorily ineligible for naturalization due to his 2003 federal conspiracy conviction, an aggravated

felony. *See* 8 U.S.C. § 1101(a)(43)(M) (defining an aggravated felony as including an offense involving "fraud or deceit in which the loss to the victim or victims exceeds $10,000"). Consequently, the district court did not err in affirming the denial of Awad's naturalization application.

## B. DHS's Delay in Deciding Awad's Administrative Appeal

Awad raises several issues with the DHS's taking six years to adjudicate his administrative appeal. Awad contends that this delay was unreasonable and suggests that it entitles him to naturalization *nunc pro tunc*. Awad essentially argues that he was eligible for naturalization in March 2000, when his application was reopened on administrative appeal. At this point, Awad suggests, the DHS had a duty to decide his administrative appeal in a timely manner. Its failure to do so, however, meant that Awad was not naturalized at the time of his 2003 federal conspiracy conviction. This conviction rendered Awad deportable and precluded him from establishing the good moral character necessary to obtain naturalization. Awad asserts that if the DHS had decided his appeal within a reasonable amount of time—that is, before his 2003 federal conspiracy conviction—it would have determined Awad to be a person of good moral character and granted his application. Moreover, because Awad would have been a naturalized citizen at the time of his 2003 conviction, that conviction would not have rendered him deportable. Thus, according to Awad, the court should order the Government to approve his naturalization application *nunc pro tunc*, thereby turning back the clock on both his citizenship and deportation.

We need not inquire into the DHS's delay or what relief—if any—this court could order, as Awad is mistaken in his assertion that he was entitled to naturalization in March 2000. Although the DHS reopened his case on administrative appeal, Awad has not demonstrated that he was *entitled* to naturalization at that time. Moreover, the DHS and district court denied Awad's naturalization application due to his failure to disclose his 1994 embezzlement

charge and the concomitant guilty plea to a lesser charge. It therefore appears that the 2003 federal conspiracy conviction was not necessary for DHS to ultimately deny Awad's application. Indeed, in Awad's administrative appeal, the DHS did not base its decision solely on Awad's 2003 federal conspiracy conviction. Instead, the DHS stated that Awad was *ineligible* for naturalization under 8 U.S.C. § 1101(f)(6), which precludes the naturalization of anyone who has made a false statement under oath to obtain a benefit under the Immigration and Nationality Act. In the DHS's eyes, Awad was statutorily ineligible for naturalization upon his failure to disclose his 1994 embezzlement charge. Although Awad attempted to explain his nondisclosure, the DHS later found his explanation to be insufficient. Consequently, even without the 2003 federal conspiracy conviction, the DHS would have denied Awad's naturalization application. The delay in adjudicating his appeal, then, did not deprive Awad of anything to which he was entitled.

## III. CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.